UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00579-RJC-DCK

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| ARTHUR T. STOVER and GIGI STOVER, | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on Plaintiff United States of America's motion for summary judgment (Doc. No. 30). The United States filed the instant motion in its action to collect $412,432.16 in unpaid taxes from Arthur and Gigi Stover. Though the Stovers admit they owe unpaid taxes, they dispute the timeliness of the United States' action with regard to the 2007 tax year, which accounts for the bulk of the Stovers' past-due taxes ($304,956.78). Both the motion for summary judgment and the Stovers' opposition turn on whether the applicable 10-year statute of limitations, or Collection Statute Expiration Date ("CSED"), was tolled by the Stovers' request of an installment agreement in 2008.

Because there is no genuine issue of material fact as to whether the Stovers requested an installment agreement on December 12, 2008, that request tolled the statute of limitations, and the Internal Revenue Services' eventual collection action was timely filed. For this reason, as elaborated below, the United States' motion for summary judgment (Doc. No. 30) is **GRANTED**.

1

I.  **BACKGROUND**

In late 2007, Arthur Stover sold his family business for about $1,400,000. (Doc. No. 30-1, at 3; *see also* Doc. No. 32, at 2). After applying the proceeds of the sale to their debts, however, the Stovers faced unexpected issues: the 2008 financial crash, along with their larger-than-normal tax bill, left the Stovers unable to pay their federal taxes. (Doc. No. 32, at 2).

The IRS assessed the Stovers' 2007 tax liability on November 24, 2008, (Doc. No. 31-1, Ex. A, at 2; Doc. No. 31-2, Ex. B, at 2), starting the CSED clock for the IRS to initiate an action against the Stovers for the balance of their unpaid taxes. Section 26 U.S.C. § 6502(a)(1) authorizes a 10-year statute of limitations on such actions to collect taxes after an assessment, and thus, the original CSED for the Stovers' unpaid 2007 taxes was November 24, 2018. (Doc. No. 34, at 5; Doc. No. 32, at 2; Doc. No. 31-3, Ex. C, at 2).

The parties agree that the Stovers incurred significant past-due taxes, and the Stovers admit "the amount of these tax liabilities are not disputed." (Doc. No. 1, at 2; Doc. No. 32, at 1). The parties further agree that the Stovers' tax issues were first addressed by the IRS Automated Collection System ("ACS"), but then transferred to a field agent, as indicated in the Stovers' IRS Archive History Transcript. (Doc. No. 31-3, Ex. C, at 3).

The parties agree on little else. According to the United States, the Stovers proposed an installment agreement on December 12, 2008, after requesting and receiving several extensions to file their 2007 tax returns. (Doc. No. 34, at 2; Doc. No. 31-1, Ex. A, at 2; Doc. No. 31-2, Ex. B, at 1; Doc. No. 31-3, Ex. C, at 3). The IRS accepted that proposed installment agreement as pending and marked it accordingly. (Doc. No. 34, at 3; Doc. No. 31-1, Ex. A, at 2; Doc. No. 31-2, Ex. B, at 2; Doc. No. 31-3, Ex. C, at 3). That proposal, according to the United States, tolled the relevant statute of limitations – under 26 U.S.C. § 6331(i)(5) and (k)(2)(A), "No levy may be made … on

the property or rights to property of any person with respect to any unpaid tax during the period that an offer by such person for an installment agreement under section 6159 for payment of such unpaid tax is pending with the Secretary."

The agreement remained pending for 643 days, and the IRS ultimately rejected it on September 16, 2010. (Doc. No. 34, at 5-6; Doc. No. 31-3, Ex. C, at 39-40). That rejection again tolled the statute of limitations, according to the United States, under 26 U.S.C. § 6331(i)(5) and (k)(2)(B): "No levy may be made … on the property or rights to property of any person with respect to any unpaid tax if such offer is rejected by the Secretary, during the 30 days thereafter."

Finally, the Stovers entered into an installment agreement in November 2013, but that agreement was terminated in April 2015. (Doc. No. 34, at 6; Doc. No. 31-1, Ex. A, at 3; Doc. No. 31-2, Ex. B, at 6). Once more, the termination tolled the statute of limitations under 26 U.S.C. § 6331(i)(5) and (k)(2)(D): "No levy may be made … on the property or rights to property of any person with respect to any unpaid tax if such agreement is terminated by the Secretary, during the 30 days thereafter."

According to the United States, these various events tolled the 10-year statute of limitations for 703 days: 643 days for the pending agreement, 30 days for the rejected offer, and 30 days for the terminated offer. (Doc. No. 34, at 6). Thus, the United States argues, by filing this lawsuit on October 20, 2020, the United States filed within the necessary statute of limitations – 703 days from the original November 24, 2018 CSED fell on October 27, 2020, one week after the United States filed this action.

The Stovers dispute much of the United States' narrative – most importantly, they deny requesting an installment agreement on December 12, 2008. (Doc. No. 32, at 2, 6). Thus, they

3

argue, the CSED expired on November 24, 2018, and the United States' collection action is untimely.[1]

Though the IRS Account Transcripts, Certified Transcripts, and Archive History Transcript indicate that the Stovers proposed an installment agreement, (Doc. No. 31-1, Ex. A, at 2; Doc. No. 31-2, Ex. B, at 2; Doc. No. 31-3, Ex. C, at 2), the Stovers identify several apparent inconsistencies. First, they note that the Account Transcript reflects that the Stovers did not appoint a representative until February 10, 2009 – several months after the installment agreement was marked as pending. (Doc. No. 32, at 2; Doc. No. 31-1, Ex. A, at 2). Next, the Stovers argue that information included in the Archive History Transcript was "impossible to have been delivered on December 12, 2008" because the Transcript references documents that were not in existence in 2008. (Doc. No. 32, at 3-4). When the case was transferred from the Automated Collection System to a field agent, Revenue Officer Lorusso, Officer Lorusso noted on July 9, 2009:

> Reviewed … ACS history. [Taxpayer] submitted documents verifying expenses and income, [installment agreement] requested
>
> Due to $$ amt case was forwarded to field for assignment/ pkg containing … Stover Agency P&L for Jan-Apr 2009 and verification of expenses.

(Doc. No. 31-3, Ex. C, at 2). These notations, the Stovers argue, prove that the Stovers did not request an installment agreement on December 12, 2008, because the January through April Stover Agency documents could not have accompanied the original proposed installment agreement.

---

[1] The Stovers do not dispute the United States' contention that the November 24, 2018 CSED would be tolled at least thirty days because of the terminated 2013 installment agreement. Those thirty days, however, would not save the United States' motion without the 673 days related to the installment agreement proposed on December 12, 2008.

4

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.* The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586

(2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id.* at 249-50.

### III. DISCUSSION

The United States bases its motion for summary judgment on the outstanding taxes owed – in amounts that the Stovers do not dispute – and on the tolled statute of limitations. The Stovers advance three theories in opposition: (1) that the apparent inconsistencies in the IRS Account Transcripts and Archive History Transcript demonstrate that the IRS records are inaccurate, and thus, that there is a genuine issue of material fact as to whether the Stovers requested an installment agreement on December 12, 2008; (2) that the IRS Archive History Transcript is hearsay because it was not created until June 6, 2009, when the Stovers' case was transferred from the Automated Collection System to a field agent, and thus, that the IRS cannot use that evidence to prove an installment agreement was pending; and (3) that IRS employees violated IRS procedure by noting that an installment agreement was pending through the Automated Collection System without first collecting the necessary documentation or contacting the Stovers to confirm the proposed agreement, and thus, that the IRS had no authority to accept the installment agreement.

Additionally, the Stovers accuse the United States of spoliating evidence – around 2012, and in accordance with the IRS's normal records retention policy, the IRS destroyed the original supporting documents submitted by the Stovers in support of the installment agreement. Thus, the Stovers argue, they are "left without any exculpatory evidence." (Doc. No. 32, at 4). This argument was the subject of a now-withdrawn motion for sanctions by the Stovers, (Doc. No. 35), and the Stovers repurposed portions of that motion in their memorandum in opposition to the United States' motion for summary judgment.

6

### A. There is no genuine dispute of material fact as to the installment agreement.

The United States met its initial responsibility of demonstrating an absence of material fact about the installment agreement, and thus, the Stovers bear the burden of bringing forth evidence to show they did not request the agreement. In their response, however, the Stovers fail to present specific facts or evidence rebutting the United States' motion, and instead rely on blanket denials. Therefore, the Stovers fail to demonstrate a genuine dispute of material fact as to the existence of an installment agreement on December 12, 2008.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Here, the parties tell two different stories, but only the United States brings evidence in support. Throughout the Account Transcripts, Certified Transcripts, and Archive History Transcript, IRS employees consistently noted a pending installment agreement on December 12, 2008, and the Stovers fail to present anything but a denial of that allegation.

In support of its motion, the United States offers two sources of evidence that show the Stovers requested an installment agreement on December 12, 2008. First, the Stovers' IRS Account Transcript notes a "Pending installment agreement" on December 12, 2008. (Doc. No. 31-1, Ex. A, at 2). Second, the Stovers' IRS Certificate of Assessments, Payments, and Other Matters notes "Request for Installment Agreement Pending," also on December 12, 2008. (Doc. No. 31-2, Ex. B, at 1). Each of these notations also has a corresponding removal of that installment agreement: on March 3, 2011, the Account Transcript notes a "Removed installment agreement," (Doc. No. 31-1, Ex. A, at 2), and the Certificate of Assessments, Payments, and Other Matters

7

notes "Request for Installment Agreement No Longer Pending" on the same day. (Doc. No. 31-2, Ex. B, at 5).

Moreover, though the Archive History Transcript does not identify the date on which the installment agreement was proposed, Officer Lorusso does note an earlier "IA Requested" when she reviewed the case in July 2009, and the Archive History Transcript later details the rejection of that agreement on September 16, 2010. (Doc. No. 31-3, Ex. C, at 3, 39). That rejection led, eventually, to removal of the pending agreement from the Stovers' account on March 3, 2011, as reflected in the Account Transcript and Certificate of Assessments, Payments, and Other Matters. The Archive Transcript History also notes a "pending IA" on September 28, 2009, "[taxpayers] requested IA" on January 19, 2010, and "pending IA" on May 28, 2010. (Doc. No. 31-3, Ex. C, at 18, 19, 29).

In response, the Stovers assert that they "did not contact the IRS concerning a payment plan," and that "[t]here is no evidence available" that they requested an installment agreement through the Automated Collection System. (Doc. No. 32, at 2). The Stovers fail to offer any proof of those assertions.

The Stovers do, however, attack the accuracy of the IRS records based on Officer Lorusso's reference to the Stover Agency P&L for January through April of 2009. Because the United States alleges that the Stovers proposed the installment agreement in 2008, the Stovers claim that reference to 2009 documents calls the accuracy of the entire record into question.

At the outset, a "presumption of regularity attaches to the actions of Government agencies," *Nardea v. Sessions*, 876 F.3d 675, 680 (4th Cir. 2017) (quoting *U.S. Postal Serv. v. Gregory,* 534 U.S. 1, 10 (2001)), "such that in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id*. (quoting *United States v. Chem. Found*.,

8

*Inc.*, 272 U.S. 1, 14–15 (1926). Moreover, "[t]he IRS's determinations are entitled to a presumption of correctness, meaning that the taxpayer bears the burden of proving it wrong." *McHan v. Comm'r*, 558 F.3d 326, 332 (4th Cir. 2009). *See also Norfolk S. Corp. v. Comm'r*, 140 F.3d 240, 244 (4th Cir. 1998) ("[D]eterminations of tax liability by the Commissioner are entitled to a presumption of correctness."). The taxpayer must prove the IRS wrong by a preponderance of the evidence. *McHan*, 558 F.3d at 332.

Not only does the Stovers' argument fail under these standards (they offer no evidence beyond stating that "a material fact exists"), but a much simpler explanation remains: Officer Lorusso's reference to the January–April 2009 documents supports the IRS's consistent records that an installment agreement was requested in December 2008. Once the case was assigned to Officer Lorusso from the Automated Collection System in June 2009, the IRS requested relevant documents to evaluate the proposed installment agreement, in accordance with IRS Procedure. (Doc. No. 31-3, Ex. C, at 10); *see also* Internal Revenue Manual 5.14.1.3.1(1)(c) ("If the taxpayer requested an IA and is not current with filing requirements … [p]rovide the taxpayer with a deadline for filing all required returns and any additional information necessary for an IA determination."). While the Stovers argue that these conflicting explanations create a dispute of material fact, the record offers only one reasonable explanation: under the evidence submitted, a rational factfinder could only agree with the IRS that the Stovers requested an installment agreement on December 12, 2008.

Because "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," *Anderson*, 477 U.S. at 247-48, the United States met its burden of showing that there is no genuine dispute over whether

the Stovers proposed an installment agreement on December 12, 2008, and thus, that agreement and its eventual rejection tolled the statute of limitations for 673 days.

Therefore, confined by this intricate and long-tolled statute of limitations under 26 U.S.C. § 6502(a)(1), 26 U.S.C. § 6331(i)(5), and 26 U.S.C. §§ (k)(2)(A), (k)(2)(B), and (k)(2)(D), the Court grants the United States' motion for summary judgment and finds the Stovers are responsible for the full balance of their unpaid taxes.[2]

### B. The United States' evidence is not inadmissible hearsay.

The Stovers argue that the United States' evidence is hearsay because the IRS destroyed the documents submitted by the Stovers in support of the installment agreement and because Officer Lorusso noted on July 9, 2009 that there was "no archieve [sic] or res history available." (Doc. No. 31-3, Ex. C, at 2). Without the original documents and with Officer Lorusso's conflicting notation in the Archive History Transcript, the Stovers argue that later descriptions of the installment agreement are hearsay. Under Fourth Circuit precedent and the Federal Rules of Evidence, the Stovers are incorrect.

The United States fails to fully address or explain Officer Lorusso's comment in its motion or companion filings, but Officer Lorusso indicated in the Archive History Transcript on the same

---

[2] Though the Internal Revenue Service is within its legal authority to pursue the Stovers for their unpaid taxes from 2007, the Court finds the IRS's delay troublesome. Time and again over the span of this fifteen-year saga, the IRS chose to linger rather than act: the IRS could have initiated this action in 2010, when the first installment agreement was rejected, in 2015, when the next installment agreement was terminated, in November 2018, before the original CSED expired, or any time in the interim. Instead, the IRS watched the clock tick towards the eleventh hour and filed suit one week before the thrice-tolled statute of limitations. Such action is inconsistent with the policy of "predictable repose" that undergirds statutes of limitations, and the IRS's delay, though strictly legal, is problematic. *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 467 (4th Cir. 2007); *see also United States v. Godley*, 136 F. Supp. 3d 724, 737 (W.D.N.C. 2015) (rejecting a statute of limitations argument that would allow the IRS to "unilaterally and periodically suspend the statute of limitations … [to] allow the IRS to circumvent the limitations period and keep the door open for potential future litigation.").

day that she *did* review the ACS history and find that the taxpayers verified their expenses and income and requested an installment agreement. (Doc. No. 31-3, Ex. C, at 3).[3]

Still, though Officer Lorusso's "no archive history" comment seemingly contradicts information entered later the same day, the fact that the Archive History Transcript was unavailable (if it indeed was) would not invalidate the rest of the IRS's evidence. For purposes of summary judgment, the United States must present material in a form that would be admissible as evidence at trial. Fed. R. Civ. P. 56(c)(2). Whether or not the July 9, 2009 notations are self-contradictory, they are not hearsay because the documents are admissible as business records under Federal Rule of Evidence 803(6). *See United States v. Goodman*, 527 F. App'x 697, 699 (10th Cir. 2013) ("The … Transcripts and the information they contain, routinely compiled by the IRS from legally mandated reports submitted by third parties in the normal course of business, were admissible under the business-record and public-record hearsay exceptions in Fed. R. Evid. 803(6) and (8)"); *United States v. Hayes*, 861 F.2d 1225, 1228 (10th Cir. 1988) (holding IRS computer records properly admitted under Rule 803(6)); *Hughes v. United States*, 953 F.2d 531, 539–40 (9th Cir. 1992) (holding IRS Certificates of Assessments and Payments admissible under Fed. R. Evid. 803(8)); *United States v. Nugent*, No. 5:16-CV-380-JMH, 2017 WL 4249775, at *2-4 (E.D. Ky. Sept. 25, 2017) (admitting IRS account transcripts pursuant to Federal Rule of Evidence 803(6)).

---

[3] The Stovers do not assert that Officer Lorusso's notation proves there was no pending installment agreement, but instead claim that if the ACS history did not exist, the Transcripts based upon it would be hearsay. Because the Stovers bear the burden of rebutting the United States' showing of an absence of material fact, the Stovers' characterization of Officer Lorusso's note is insufficient to overcome that burden. Still, even if the Stovers had presented that note as evidence that the entire ACS history did not exist, such an allegation is insufficient in the light of the whole record – indeed, the ACS history is attached and referenced as an exhibit in the instant motion. Thus, because "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 557 U.S. at 586.

11

The Fourth Circuit, addressing similar circumstances while reviewing admission of Bureau of Alcohol, Tobacco, and Firearms ("ATF") forms filled out by third parties, held that though such forms were not admissible under Rule 803(6) because the forms were neither made at the time of the transaction described nor were made for a regular business purpose, the forms were still admissible under the residual hearsay exception because "there is simply no reason … to falsify the entries on the routine ATF forms," and "[t]he forms thus have the circumstantial guarantees of trustworthiness." *United States v. Simmons*, 773 F.2d 1455, 1459 (4th Cir. 1985).

Here, the IRS records are admissible pursuant to Fed. R. Evid. 803(6) and 807 – unlike the forms in *Simmons*, the IRS forms before the Court here squarely meet the parameters of Rule 803(6). Moreover, even if these were inadmissible as business records, the documents enjoy the same "circumstantial guarantees of trustworthiness" as those held admissible in *Simmons*, and they are admissible under Rule 807's residual hearsay exception.

The Stovers also argue, both in opposition to the United States' motion for summary judgment and in a now-withdrawn motion for sanctions, that the IRS spoliated evidence by destroying the original documents that the Stovers created and submitted to support the proposed installment agreement. "Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp*., 271 F.3d 583, 590 (4th Cir. 2001). The Stovers twice argue that they are "left without any exculpatory evidence," (Doc. No. 32, at 4, 7), but they fail to argue that the instant litigation was reasonably foreseeable at the time the IRS destroyed the documents – two years after rejection of the proposed installment agreement, a year before the parties entered into a new installment agreement, and eight years before this action was filed. Thus,

the Stovers' spoliation argument has no bearing on the United States' motion for summary judgment.

Therefore, because the Account Transcripts, Certified Transcripts, and Archive History Transcript fall under exceptions to the rule against hearsay, they are all materials that would be admissible at trial, and the IRS may rely on those materials for purposes of summary judgment.

### C. The IRS complied with Internal Revenue Manual Procedures in approving the installment agreement.

The Stovers allege that the IRS failed to follow proper procedure in three ways, and thus, that the IRS did not have authority to accept a pending installment agreement. First, the Stovers note that they had no power of attorney on file as of December 12, 2008. Second, the Stovers allege that the IRS should not have processed the installment agreement through the Automated Collection System, because at the time of processing, the Stovers had submitted only partial income and expense information. Third, and finally, the Stovers claim that the IRS ignored Internal Revenue Manual ("IRM") procedure by failing to "[a]ttempt to contact the taxpayer and determine if the taxpayer requested an IA." IRM 5.14.1.3.1. Each of these arguments fail.

The Stovers' reference to a power of attorney is irrelevant; under IRM 5.14.1.3, "Proposals to enter into IAs may result from letters, phone contacts, voice mail, e-mail, or other communications between taxpayers and IRS personnel." *See also* 26 U.S.C. § 6159(a) ("The Secretary is authorized to enter into written agreements with any taxpayer under which such taxpayer is allowed to make payment on any tax in installment payments if the Secretary determines that such agreement will facilitate full or partial collection of such liability."). The Stovers could request and enter into an installment agreement with or without an attorney, and thus, the Stovers bring their first argument in error.

The Stovers' second argument appears to reference the Archive History Transcript prepared by Officer Lorusso as it relates to IRM 5.14.1.4.2(5), which directs IRS employees: "Do not identify requests for agreements as 'pending' agreements if the taxpayers have not filed all required returns." On July 9, 2009, while reviewing the Stovers' file, Officer Lorusso noted, "No … completed F433-A was received," and the Stovers assert that without this form, the "alleged IA was not processable by ACS and therefore the TC 971 AC 043 should not have been input by ACS." (Doc. No. 32, at 6).[4] The manual, however, provides further direction for cases received from the Automated Collection System: "If the taxpayer requested an IA and is not current with filing requirements (TC 971 AC 043 input in error), do not reverse the TC 971 AC 043 immediately. Provide the taxpayer with a deadline for filing all required returns and any additional information necessary for an IA determination." IRM 5.14.1.3.1(c).

The Stovers do not deny that Officer Lorusso did just that – on July 13, 2009, after a conversation with the Stovers, Officer Lorusso set a deadline for receipt of the necessary outstanding documents. (Doc. No. 31-3, Ex. C, at 10) ("Per our conversation on Monday 7/13/09, the following deadlines have been set … By 8/15/09 … Completed Collection Information Statement form 433-A."). Thus, the Stovers fail to demonstrate a genuine issue of material fact as to whether the IRS had authority to accept the installment agreement as pending.

As addressed in oral argument, a recent decision by the Southern District of Florida could offer the Stovers a life preserver: there, when the IRS accepted an installment agreement as pending though the agreement did not comply with IRM procedures (namely, that the proposal be for a specific amount), the court rejected the IRS's tolling argument under Treasury regulations

---

[4] "TC 971 AC 043" is the IRS code for "pending IA indicator," as reflected on the Stovers' Account Transcript. *See* IRM 5.14.4.3(2).

14

requiring the IRS to follow internal procedures. *United States v. Bode*, 546 F. Supp. 3d 1317, 1321 (S.D. Fla. 2021) (citing 26 C.F.R. § 301.6159-1(b)(1) (2010) ("A proposed installment agreement must be submitted according to the procedures, and in the form and manner, prescribed by the Commissioner.")); *id.* at 1323 ("Treasury regulations are binding on the Government as well as the taxpayer.") (quoting *Romano-Murphy v. Comm'r of Internal Revenue*, 816 F.3d 707, 718 (11th Cir. 2016)). Because the IRS is bound by that Treasury regulation, *Bode* reasoned, the IRS can accept only those installment agreements submitted in accordance with IRM procedures, and thus, improper or incomplete installment agreement proposals cannot toll the statute of limitations.

That binding treasury regulation is immaterial, however, because it was not in force in December 2008. At the time the Stovers submitted and the IRS accepted the installment agreement, Treasury regulations granted total discretion to the IRS: "The director has the discretion to accept or reject any proposed installment agreement." 26 C.F.R. § 301.6159-1(b) (2008). Thus, not only did Officer Lorusso comply with IRM procedures as outlined in IRM 5.14.1.3.1(c), but even if ACS accepted the original installment agreement in error, such an error has no effect.

The Stovers also assert that "[t]here is no mention in the initial receiving revenue officer's case history as to … a specific amount of an installment proposed by either the taxpayer(s) or their authorized representative." (Doc. No. 32, at 6), and thus, that acceptance of the agreement was improper because IRM 5.14.1.3(4)(c) requires that installment agreements be proposed for "specific amount[s]." While the Stovers claim – rightfully – that their proposal must include a sum certain, they offer no authority for the position that the amount must be in writing, or that the amount must be reflected in an initial Archive History after referral from ACS. The United States brings evidence that the proposed amount was $500 a month, and the Stovers fail to dispute that evidence. (Doc. No. 31-3, Ex. C, at 37 ("[Power of attorney] has discussed the issue with the

15

[taxpayers] and they think … they could only pay $500/month"). Without the benefit of any supporting authority, and in the face of the United States' clear evidence that the installment agreement was proposed for a specific amount, the Stovers again fail to meet their burden of demonstrating a genuine issue of material fact.[5]

Finally, the Stovers claim that Officer Lorusso failed to contact the taxpayer or their properly authorized representative, but the Stovers offer no cites the record or any other evidence to support their contention. *See Celotex*, 477 U.S. at 322 n.3 (The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial"). Regardless, the record blatantly contradicts the Stovers' argument, and "a reasonable jury could return a verdict" only for the United States on this point. *See Anderson*, 477 U.S. at 248. Under IRM 5.14.1.3.1, "[i]f cases are assigned to the field from ACS or campuses with [a pending installment agreement] present on one or more of the tax modules, employees will attempt to contact the taxpayer and determine if the taxpayer requested an IA, [and] if the taxpayer requested an IA, follow the procedures in IRM 5.1.10.3.2."

---

[5] Alternatively, if the IRS did accept the installment agreement and mark it as pending even though it included no sum certain, such a mistake by the IRS would be uncontrolling. Under Fourth Circuit and Supreme Court precedent, "internal rules of agency procedure" are distinct from "regulations promulgated pursuant to statutory directive for a taxpayer's benefit." *Groder v. United States*, 816 F.2d 139, 142 (4th Cir. 1987) (citing *United States v. Caceres*, 440 U.S. 741 (1979)). Under *Groder*, sections of the IRM are agency procedure if they "confer[] no substantive rights or privileges upon taxpayers," and a violation of those guidelines by the IRS is without legal effect unless the taxpayer shows the "government proceeded against him in bad faith." *Id*.

IRM 5.14.1.3(4)(c) is one such section – it provides only a rule of agency procedure, not a substantive right. *See Groder*, 816 F.2d at 142; *United States v. Mapp*, 561 F.2d 685, 690 (7th Cir. 1977) (distinguishing similar internal IRS procedures from those which confer rights on taxpayers); *United States v. Lockyer*, 448 F.2d 417, 421 (10th Cir. 1971) (same); *United States v. Kaatz*, 705 F.2d 1237, 1243 (10th Cir. 1983) (same); *United States v. Arthur Andersen & Co.*, 43 A.F.T.R.2d 79–1161, 79–1162 (2d Cir. 1979) (same). Because the Stovers do not allege bad faith on the part of the IRS, then even if the IRS misapplied their procedures, the error would be inconsequential.

Officer Lorusso attempted contact repeatedly: the Archive History Transcript shows that she attempted contact on July 13, 2009, reported contact later on July 13, and followed up by requesting supporting documents (including Form 433-A) and confirming deadlines with the taxpayers that same day. (Doc. No. 31-3, Ex. C, at 5-10). She also followed the procedures in IRM 5.1.10.3.2, noting she "requested CIS in accordance [with] IRM 5.1.10.3.2(3)." (Doc. No. 31-3, Ex. C, at 7). In short, the Stovers fail to meet their burden of proving that the IRS failed to contact them or follow other IRM procedures after the United States met its burden in its motion for summary judgment.

Thus, because the Stovers were free to request their installment agreement without a power of attorney and because the Stovers fail to show that the IRS misapplied IRM procedures, and, in any event, the IRS enjoyed total discretion over the acceptance of installment agreements in 2008, the Stovers fail to present sufficient evidence from which "a reasonable jury could return a verdict" for them, *Anderson*, 477 U.S. at 248, and the United States meets its burden under Federal Rule of Civil Procedure 56(a).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the United States' Motion for Summary Judgment (Doc. No. 30) is **GRANTED**. The Clerk is directed to close this case.

Signed: February 17, 2023

Robert J. Conrad, Jr.
United States District Judge